UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ALEXIS RIVERA,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | 3:05-CV-1907 (WWE) |
| : | |
| **THE MEN'S WEARHOUSE, INC.,** : | |
| : | |
| **Defendant.** : | |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

In this action, plaintiff Alexis Rivera claims that defendant The Men's Wearhouse, Inc. ("TMW") violated his right to be free from discrimination based on his race and ethnicity. Specifically, plaintiff alleges that TMW practiced racial bias in the course of his employment at various outlets of the company. He argues that TMW denied him promotions and raises, gave him undesirable assignments, and led him to leave the company and take a lesser paying job in an unrelated field. Plaintiff claims that defendant violated Conn. Gen. Stat. § 46a-60, the Connecticut Fair Employment Practices Act ("CFEPA"); Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 1981 and intentionally inflicted emotional distress. Defendant moves for dismissal of all claims.

1

**BACKGROUND**

Plaintiff is Hispanic. TMW is a men's clothing store with its principle place of business in West Hartford, Connecticut. Plaintiff was employed by TMW from May 1999 until July 3, 2004, when he voluntarily resigned from his position of store manager. In 2002, Antonio Lorenzo was promoted to district manager. In this capacity, Antonio Lorenzo served as plaintiff's direct supervisor. Antonio Lorenzo's direct supervisor was Christopher Lorenzo, Antonio's brother and the regional manager of TMW. Both Christopher and Antonio Lorenzo are Caucasian.

Plaintiff was originally hired at TMW as assistant manager. In this capacity, he received bonuses and, in 2000, a promotion to store manager. In 2001, plaintiff was given a raise. However, after 2001, plaintiff claims that he was denied the company's standard yearly raise and was passed over for the promotion to district manager. Despite plaintiff's alleged superior qualifications, Antonio Lorenzo was hired for that position. Plaintiff asserts that he was also passed over for the same position in 2002. In 2003, plaintiff was awarded "Top Turn Around" for his successful performance in the West Hartford store, where he increased the store's productivity and profitability. Plaintiff claims, however, that he was denied the standard yearly raise again in that year. He asserts that less qualified and poorer performing store managers at all other stores received raises.

Plaintiff alleges that during this time, he heard expressions of concern from his subordinates and co-workers that Antonio Lorenzo demonstrated racial bias. He was told that while at meetings and in the stores, Antonio Lorenzo would make numerous racial comments against Hispanics and African-Americans. Plaintiff claims that

Antonio referred to the stores to which plaintiff was assigned as "ghetto stores" that needed to be "cleaned up." He also alleges that in 2003, he was aware of one other employee who had complained about racial discrimination; specifically, that she was demoted because of her race and she resigned as a result.

In 2004, plaintiff was given a raise. However, in April or May of that year, plaintiff contacted Carol Souvenir, Vice President of Human Resources and company counsel, to express his concerns about the way the district and region were being run, "particularly in reference to racial bias." (Complaint, ¶ 43.) Ms. Souvenir did not pursue the conversation with Mr. Rivera.

On or about July 3, 2004, plaintiff voluntarily resigned from TMW, alleging that his resignation was due to his "realizing that he will never be promoted within the District or the Region under the Lorenzo brothers, seemingly due to Plaintiff's racial, ethnic and national origin." (Complaint, ¶ 46.)

Upon his resignation, plaintiff made a complaint of racial bias to three individuals, including Executive Vice President Charlie Bussler. Bussler told plaintiff he would investigate the problem; plaintiff alleged that he and Bussler called each other numerous times, leaving messages for each other, until plaintiff received a letter from Bussler's office, telling him that Bussler had been unable to contact him. Plaintiff does not know if anything else was done pursuant to Bussler's promise of an investigation into the matter.

On or about November 26, 2004, plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") claiming that in the region run by Christopher Lorenzo, all of the district managers and store managers are

3

Caucasian and that plaintiff experienced discrimination because of his race. This complaint was filed simultaneously with the federal Equal Employment Opportunities Commission ("EEOC"). The CHRO dismissed plaintiff's case by its "Merit Assessment Review" Notice of Dismissal on April 11, 2005. Plaintiff alleged that he received a Release of Jurisdiction from the CHRO on August 17, 2005 and a Right to Sue letter from the EEOC on or about August 18, 2005, thereby allowing him to bring a court action based on his allegations of racial discrimination.

Plaintiff filed his complaint in Connecticut Superior Court, Judicial District of Hartford, on November 15, 2005 and the matter was removed to this Court by petition dated December 14, 2005. He claims that TMW's conduct violated CFEPA (count one); constituted disparate treatment in violation of Title VII (count two); resulted in disparate impact pursuant to Title VII (count three); violated 42 U.S.C. § 1981 (count four); and intentionally caused him emotional distress (count five). Defendant argues that plaintiff's claims under CFEPA and Title VII are time-barred and should be dismissed. It also asserts that plaintiff's claim pursuant to § 1981 should be dismissed insofar as it alleges a constructive discharge and refers to time-barred incidents and that plaintiff's claim of intentional infliction of emotional distress fails as a matter of law. The Court agrees with TMW.

## DISCUSSION

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved

consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The function of a motion to dismiss "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980). In considering a motion to dismiss, a court must presume all factual allegations of the complaint to be true and must draw any reasonable inferences in favor of the non-moving party. Cruz v. Beto, 405 U.S. 319, 322 (1972).

In this matter, defendant argues that the respective statutes of limitation preclude plaintiff from prevailing on his claims under CFEPA and Title VII. Specifically, a CFEPA claim must be brought to the CHRO within 180 days of the last alleged act of discrimination. Conn. Gen. Stat. § 46a-82(e). A Title VII claim must be brought within 300 days of the discriminatory act. 42 U.S.C. § 2000e-5(e)(1).

Here, plaintiff alleges that the discriminatory acts occurred from 1999 to 2004. Specifically, he alleges that the last discriminatory act occurred on July 3, 2004, when he resigned from TMW and took a lower-paying job elsewhere. Prior to his resignation, plaintiff's allegations of discriminatory treatment involve acts performed between 1999 and 2003. He filed his complaint with the CHRO and the EEOC on November 26, 2004. This case was filed in state court by complaint dated November 15, 2005.

Plaintiff bases his argument on the fact that he voluntarily resigned on July 3, 2004. He claims that because his resignation occurred within the applicable statutes of limitation, his claims under CFEPA and Title VII are not time-barred. Defendant asserts that all pre-January 2004 CFEPA and Title VII violations allegations are time-barred.

Defendant argues that plaintiff's voluntary resignation does not constitute a

"discriminatory act" and that the cut-off date for the other alleged discriminatory acts with regard to the CHRO filing was May 30, 2004; i.e., acts occurring more than 180 days prior to the filing of the action with the CHRO, November 26, 2004. Similarly, the cut-off date for acts alleged in the EEOC filing was January 31, 2004, or 300 days prior to the filing of the complaint with the EEOC.

In order to defeat the statutes of limitations set forth by CFEPA and Title VII, plaintiff must demonstrate a continuing course of discriminatory conduct that led to his resignation. In <u>Weeks v. New York State</u>, 273 F.3d 76, 82-83 (2d Cir. 2001), the Second Circuit held that the continuing violation exception is applicable only where there are identifiable discriminatory customs or practices, or specific and related acts that comprise such customs or policies.[1] If a plaintiff can identify only discrete acts of discrimination, it is not possible to allege a "continuing violation."

> The continuing violations doctrine is a narrow exception to the limitations period, and courts of this Circuit have generally been loath to apply it without a showing of compelling circumstances. The doctrine has essentially been limited to situations where a specific discriminatory policy or mechanism has been alleged. Completed acts or discrete incidents such as termination or resignation, job transfer, discontinuance of a job assignment, denial of a promotion or increased pay grade, or failure to compensate adequately are not acts of a continuing nature and, thus, cannot be the premise of a continuing violation claim. Nor can a continuing violation be established merely because the claimant continues to feel the effects of a time-barred discriminatory act or merely because the claimant continues his or her employment. Rather, the claimant must allege both the existence of an ongoing policy of discrimination and

---

[1] The rumors plaintiff allegedly heard are not "identifiable" in that plaintiff did not hear the comments firsthand and, therefore, is not able to identify them with any specificity.

6

>some act taken in furtherance of that policy within the
>limitations period.

DeJesus v. Starr Technical Risks Agency, Inc., 2004 WL 2181403, *6 (S.D.N.Y.).

Plaintiff "could not use a termination that fell within the limitations period to pull in the time-barred discriminatory act.  Nor could a time-barred act justify filing a charge concerning a termination that was not independently discriminatory."  National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).  In the instant case, plaintiff's allegations do not suggest an "ongoing policy of discrimination."  He claims that, on occasion, he heard rumors of racial slurs.  He does not state that any of these alleged comments were directed towards him.  He claims that he was passed over for promotions and did not receive the standard yearly raise in 2002 and 2003.

Even if plaintiff could allege a continuous course of conduct, his voluntary resignation in and of itself does not rise to the level of a "discriminatory act" and, therefore, does not obviate the statute of limitation hurdle.  "This circuit has held that a voluntary resignation is not an adverse employment action unless the employee was constructively discharged."  Chanval Pellier v. British Airways, PLC, 2006 WL 132073, *4 (E.D.N.Y.).  "To find that an employee's resignation amounted to a constructive discharge, the trier of fact must be satisfied that the . . .  working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1188 (2d Cir. 1987).

Here, plaintiff concedes that he does not allege a constructive discharge.

Accordingly, his allegation that his voluntary resignation was the culmination of a continuous course of conduct and, therefore, an act of discrimination that falls within the time required by the statutes of limitation for CFEPA and Title VII must fail.

As for plaintiff's claims pursuant to § 1981 and the intentional infliction of emotional distress, they are controlled by the Connecticut personal injury statute of limitations: three years. See Goodman v. Lukens Steel Co., 482 U.S. 656, 660, 107 S.Ct. 2617, 2620, 96 L.Ed.2d 572 (1987) (since § 1981 does not have a statute of limitations, federal courts use the most analogous state statute of limitations in claims brought under § 1981); see also Ortiz v. Prudential Ins. Co., 94 F.Supp.2d 225, 233 (D.Conn. 2000) (Conn. Gen. Stat. § 52-577 establishes that the applicable period is the three year statute of limitations in tort.).   Plaintiff filed this complaint on November 15, 2005.  Therefore, all the alleged incidents that occurred before November 15, 2002 are time-barred.   Furthermore, defendant asserts that even if plaintiff did assert the presence of discriminatory acts after November 15, 2002, his allegations of § 1981 violations and the intentional infliction of emotional distress fail as a matter of law.

Plaintiff's claims pursuant to § 1981 and his tort claim of intentional infliction of emotional distress cannot survive a motion to dismiss.  Inasmuch as his assertion of the violation of his rights under § 1981 does not include a claim of constructive discharge, it is not possible for plaintiff to show that he suffered a continuing course of discriminatory conduct that led to his resignation.

Plaintiff's claim of intentional infliction of emotional distress also fails.  In Connecticut, in order to sustain a claim for intentional infliction of emotional distress, a plaintiff must allege that: 1) defendant intended to inflict emotional distress or that

defendant knew or should have known that emotional distress was a likely result of defendant's conduct; 2) defendant's conduct was extreme and outrageous; 3) defendant's conduct was the cause of plaintiff's distress; and 4) the emotional distress sustained by plaintiff was severe.  Shuler v. Regency House of Wallingford, Inc., 2006 WL 118383, *4 (D.Conn) (holding that alleged discriminatory remarks in evaluations, harassment and retaliation did not rise to the level of "outrageous conduct;" "reassigning, monitoring and evaluating employees are routine employment actions, which do not expose employers to liability for intentional infliction of emotional distress, even if motivated by an improper purpose"). See also, Petyan v. Ellis, 200 Conn. 243, 254, n. 5 (1986) ("The rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.").

Plaintiff's allegations do not meet the standard for "conduct exceeding all bounds tolerated by a decent society."  Plaintiff refers to being passed over for promotion in favor of the supervisor's brother, to being assigned to stores in undesirable locations, to rumors of allegedly racist comments, and to the alleged discrimination faced by a co-

worker. Viewing these allegations in the light most favorable to plaintiff, none rises to the level of "outrageous conduct," despite the deplorable nature of any claims of racial discrimination. The Court grants defendant's motion to dismiss plaintiff's claim of the intentional infliction of emotional distress.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [Doc. # 13] is GRANTED. The Clerk is instructed to close this case.

SO ORDERED this 27th of June, 2006 at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge